UNITED  STATES  DISTRICT  COURT

FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA

| UNITED STATES OF AMERICA, | ) | CASE NO. SACR 06-0224 AG |
|---|---|---|
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT DEBORAH CARONA'S MOTION FOR DISCLOSURE OF GRAND JURY TRANSCRIPTS AND DISTRIBUTION OF QUESTIONNAIRE TO GRAND JURY MEMBERS |
| MICHAEL CARONA, et al., | ) ) | |
| Defendants. | ) ) ) | |

Before the Court is the Motion of Defendant Deborah Carona ("Defendant") for Disclosure of Grand Jury Transcripts and Distribution of Questionnaire to Grand Jury Members to Determine Bias ("Motion"). This Motion has been joined by Defendant Debra Hoffman. Defendant contends that conduct of the Government before the two indicting grand juries in this case deprived her of her constitutional right to due process and an impartial grand jury. She argues that she needs to inspect the transcripts and poll the jury to find evidence for a motion to dismiss. After considering the moving, opposing, and reply papers, and oral argument by the parties, the Court GRANTS in part and DENIES in part the Motion.

## BACKGROUND

On October 25, 2007, Defendant was charged in a First Superseding Indictment ("FSI") with conspiracy to commit honest services mail fraud and bribery in violation of 18 U.S.C. § 371.  The FSI alleged, among other things, that Defendant failed to properly disclose a valuable gift on her Annual Year 2002 Statement of Economic Interests ("2002 SEI"), which she filed as a member of the Orange County Fair Board.  (FSI 18:22-26.)  Before the return of the FSI, and again in January 2008, counsel for Defendant "correctly informed the government that defendant's receipt of a $15,000 Cartier watch and the omission of that gift on her SEI did not violate conflict of interest rules governing Orange County Fair Board Members."  (Steward Declaration ¶ 6; Opposition 1:7-11.)

On January 30, 2008, in one day, the Government obtained from a newly impaneled grand jury the Second Superseding Indictment ("SSI").  The SSI is largely the same as the FSI, but it eliminates any mention of Defendant's 2002 SEI.

Defendant has filed this Motion, arguing that these facts indicate that the Government's behavior before both grand juries was improper.  Defendant argues that the Government wrongly advised the first grand jury of the law concerning Defendant's reporting requirements, and questions the SSI grand jury's ability to "so quickly process a multi-year investigation . . . and return an SSI."  (Motion 10:6-8.)  Defendant theorizes that perhaps "the SSI grand jury was so overwhelmed with publicity and pre-conceived notions concerning the defendants that returning an SSA that merely reduced charges was facile," or perhaps "the grand jury didn't pay attention to the correctness of the new allegations and simply rubber stamped them."  (Motion 10:8-16.)  For these reasons, Defendant argues that the Court should order disclosure of the grand jury transcripts and extensive questioning of the SSI grand jury.  Defendant seeks to use the information gained in a later motion to dismiss.

**LEGAL STANDARD**

The Fifth Amendment of the Constitution provides: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." This guarantee of indictment before a grand jury guarantees an investigative body "acting independently of either prosecuting attorney or judge." *United States v. Dionisio*, 410 U.S. 1, 16 (1973) (quoting *Stirone v. United States*, 361 U.S. 212, 218 (1960)). Differently stated, "nothing more is constitutionally required of an indictment than that it be 'returned by a legally constituted and unbiased grand jury.'" *United States v. Samango*, 607 F.2d 877, 881 n.6 (9th Cir. 1979) (quoting *Costello v. United States*, 350 U.S. 359, 363 (1956)).

**ANALYSIS**

**1.      RELEASE OF GRAND JURY TRANSCRIPTS**

Grand jury proceedings are presumptively secret. Fed. R. Crim. Pr. 6(e). However, Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) provides that a court may authorize disclosure of grand jury transcripts "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Courts have interpreted this to mean that defendants seeking disclosure of grand jury materials must show a "particularized and compelling need" for the materials. *U.S. Industries, Inc. v. U.S. Dist. Court for Southern Dist. of Cal., Central Division*, 345 F.2d 18, 21 (9th Cir. 1965). This particularized need can arise in the context of "unfair or improper prosecutorial conduct." *Samango*, 607 F.2d at 881 (quoting *United States v. Chanen*, 549 F.2d 1306, 1309 (9th Cir. 1977) (citations and footnotes omitted)).

To show that a ground may exist to dismiss the indictment based on prosecutorial misconduct, a defendant must show that misconduct "substantially influenced the grand jury's

decision to indict, or . . . [that] there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (citation and internal quotations omitted).  But "mere unsubstantiated, speculative assertions of improprieties in the proceedings do not supply the particularized need required to outweigh the policy of grand jury secrecy." *United States v. Ferrebouef*, 632 F.2d 832, 835 (9th Cir. 1980) (citation and internal quotations omitted).

"[T]he examination for the presence of the particularized need must be undertaken first and then, if shown, it will be evaluated against the need for continued secrecy." *United States v. Welch*, 201 F.R.D. 521, 524 (D. Utah 2001) (citing *In re Special Grand Jury 89-2*, 143 F.3d 565, 571 (10th Cir. 1998); *United States v. Rockwell International Corp.*, 173 F.3d 757, 759-60 (10th Cir. 1999).  The traditional policy reasons for grand jury secrecy are:

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before the grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect the innocent accused who is exonerated from disclosure of the fact that he has been under investigation.

*U.S. Industries*, 345 F.2d at 22 (quoting *United States v. Amazon Ind. Chem. Corp.*, 55 F.2d 254 (D.Md. 1931)).  In the present case, only the third and forth considerations apply.  Accordingly, those considerations are weighed against Defendant's asserted need for disclosure of grand jury materials.  Defendant seeks disclosure of the transcripts of the deliberations that returned the FSI and the transcripts of the deliberations that returned the SSI.  The Court will address these in turn.

1

## 1.1     Release of Transcripts of First Grand Jury

2

3          Defendant argues that release of the transcripts of the FSI grand jury is necessary because

4     it is clear that the FSI grand jury was misinformed about the law regarding Defendant's

5     reporting requirements.  Defendant argues that release of the transcripts is necessary to

6     determine: (1) who misled the FSI grand jury about the propriety of Defendant's reporting, (2)

7     how the FSI grand jury was misled, (3) why the FSI grand jury was misled, (4) how probative

8     the evidence was against Defendant without the false information regarding her reporting, and

9     (5) whether the deception of the FSI grand jury was egregious enough to warrant dismissal of the

10    FSI with prejudice, thus rendering the SSI nugatory.  (Motion 7:13-18.)  The Court disagrees.

11          Defendant has made a specific showing that the FSI grand jury was likely misinformed

12    about Defendant's reporting requirement.  But Defendant's speculation about egregious

13    deception and lack of probative evidence for other charges is just that – speculation.  "[M]ere

14    unsubstantiated, speculative assertions of improprieties in the proceedings do not supply the

15    particularized need required to outweigh the policy of grand jury secrecy."  *United States v.*

16    *Ferrebouef*, 632 F.2d 832, 835 (9th Cir. 1980).  Further, a defendant may not challenge an

17    indictment "on the ground that there was inadequate or incompetent evidence before the grand

18    jury."  *Costello v. United States*, 350 U.S. 359, 402 (1956).  Finally, there is a presumption of

19    regularity that attaches to grand jury proceedings.  *See, e.g.*, *Hamling v. United States*, 418 U.S.

20    87, 139 n.23 (1974).  Accordingly, the Court will analyze Defendant's Motion assuming only

21    that disclosure of the transcripts will show that the prosecutor misinformed the FSI grand jury

22    about Defendant's reporting requirements.

23          Again, Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) provides that a court may

24    authorize disclosure of grand jury transcripts "at the request of a defendant who shows that a

25    ground may exist to dismiss the indictment because of a matter that occurred before the grand

26    jury."  The operative indictment at this time is the SSI.  Thus, for this Court to allow disclosure

27    of the transcripts of the FSI grand jury proceedings, Defendant must show that a matter that

28

occurred before the FSI grand jury may be grounds for dismissal of the SSI.  But Defendant has not shown that the prosecutor misinforming the FSI grand jury about the law concerning an overt act not included in the SSI should form a basis for dismissal of the SSI.  Defendant's arguments to that effect are arguments that the SSI grand jury did not have adequate evidence before it, and are improper.  Accordingly, the request for disclosure of the transcripts of the FSI grand jury is DENIED.

### 1.2    Release of Transcripts of Second Grand Jury

Defendant argues that release of the transcripts of the SSI grand jury is necessary largely because the SSI grand jury returned the indictment in only one day.  Defendant argues that release of the transcripts is necessary to determine: (1) whether the Government rushed the SSI grand jury's investigation, and (2) whether the SSI acted as a "rubber stamp" of the actions of the earlier grand jury or the entreaties of the prosecutors.  (Motion 7:18-20.)

Defendants argue, under *United States v. Samango*, 607 F.2d 877 (9th Cir. 1979), that this Court should allow access to the SSI transcripts because the SSI grand jury was likely rushed to return an indictment.  In that case, the Ninth Circuit affirmed a district court's dismissal of an indictment.  The court held that "the cumulative effect" of the many "errors and indiscretions" in that case "operated to the defendants' prejudice by producing a biased grand jury."  *Id.* at 884. Dismissal was warranted there because the government's conduct before the grand jury "represented a serious threat to the integrity of the judicial process."  *Id.* at 885.

In *Samango*, a prosecutor went before three grand juries seeking an indictment.  After the second grand jury returned an indictment, later characterized by the District Court as an "embarrassment," the defendants moved to dismiss.  *Id.* at 879.  The hearing on the motion to dismiss was scheduled for December 21, 1977.  *Id.*  On December 12, 1977, the prosecutor approached a third grand jury in an attempt to avoid the issues raised in the motion to dismiss. *Id.*  He "left an accumulated 1,000 pages of transcripts and a prepared Superseding Indictment

1    with [the] third grand jury and informed them off the record that he had a December 20th

2    deadline." *Id.* The third grand jury heard testimony from only one witness and returned the

3    Superseding Indictment within the deadline. *Id.*

4        The *Samango* court noted that the lengthy transcripts were "deposited" with the grand

5    jury and that "the record does not show how much time the jurors spent with the transcripts nor

6    whether they read them at all." *Id.* at 881. The court pointed out that the prosecutor knew of the

7    "doubtful credibility" of one of the witnesses, but did not inform the third grand jury of that.

8    The court noted that the third grand jury may have been deceived by that witness's testimony

9    transcript, because reading the transcript gave the testimony more credibility than actually

10   hearing it would have. *Id.* Additionally, the prosecutor supplied a transcript of a witness to the

11   third grand jury that "did not contribute any useful information for the grand jury's

12   investigation," but was exceedingly prejudicial. *Id.* at 883. Yet another witness's testimony was

13   "deceiving," caused "confusion," and "would not necessarily impress on [jurors] [the witness's]

14   deficiencies as a witness." *Id.* Finally, the court pointed out that it appeared that the third grand

15   jury was not aware that they could call live witnesses. These many errors, cumulatively, caused

16   the court to conclude that the prosecutor had created a biased grand jury. *Id.* at 884.

17        The facts in *Samango* are much more extreme than the facts before this Court. Still, there

18   are important similarities. First, the prosecutor in this case, like the prosecutor in *Samango*,

19   sought a superceding indictment to clean up problems with a previous indictment. Second, the

20   new grand jury spent very little time considering that superceding indictment. Third, while there

21   are no allegations here that witness testimony before the first grand jury lacked credibility, it

22   seems likely that the same problems of evaluating witness credibility while reading transcripts

23   would arise in this case as arose in *Samango*. Finally, the SSI contains what the Government

24   terms a "citation error," which indicates that the indictment process was likely hurried. Here, it

25   is possible that the prosecutor's rush to have an SSI returned in this case "represented a serious

26   threat to the integrity of the judicial process." *Id.* at 885. Thus, Defendant has shown a

27   particularized need for disclosure of the grand jury materials.

28

1    Weighing Defendant's need for disclosure against the applicable policy reasons for grand
2    jury secrecy, the Court finds that *in camera* review of the transcripts of the SSI grand jury is
3    appropriate.  The parties have agreed that the Court may review the transcripts *in camera* and
4    produce to the parties selected material.  Thus, mindful of secrecy concerns, the Court will
5    review the transcript and produce to Defendant material, if any, that is relevant to her arguments
6    that the Government improperly rushed the SSI grand jury and that the SSI grand jury simply
7    acted as a rubber stamp.  *See United States v. Plummer*, 941 F.2d 799, 806 (9th Cir. 1991)
8    ("[O]nly the relevant parts of the transcripts should be disclosed.")  This material will also be
9    produced to Defendant Debra Hoffman, as she has joined this Motion.  Thus, Defendant's
10   Motion as to the SSI grand jury transcripts is GRANTED to the extent that *in camera* review
11   reveals material relevant to Defendant's arguments.

12

13        **2.    POST-INDICTMENT QUESTIONING OF GRAND JURORS TO**
14             **EVALUATE BIAS**

15

16        Defendant argues that the high profile nature of this case likely caused the SSI grand jury
17   to be biased towards Defendant and her codefendants.  Defendant argues that the Court should
18   permit Defendant to evaluate the potential bias by distributing a questionnaire to the SSI grand
19   jury members.

20        Defendant recognizes that to obtain a dismissal of the SSI based on pre-indictment
21   publicity, she must actually show that such publicity tainted the grand jury.  *United States v.*
22   *Civella*, 648 F.2d 1167, 1173 (8th Cir. 1981).  But Defendant contends that she cannot satisfy
23   that burden without input from the grand jurors.  Thus, she requests the ability to question the
24   grand jurors so that she may satisfy her burden of proving bias.

25        Defendant cites no case allowing post-indictment questioning of grand jurors.  Given that,
26   and given the principles of independence and secrecy that surround operations of the grand jury,
27   the Court finds post-indictment questioning of the grand jury improper.  Accordingly, the

28

Motion is DENIED to the extent it requests distribution of a questionnaire to the SSI grand jurors.

**<u>CONCLUSION</u>**

Defendant's Motion is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

DATED: May 2, 2008

_____

Andrew J. Guilford

United States District Judge