UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. SA CR 06-224-AG |
| Plaintiff, | ) ) | ORDER GRANTING DEFENDANT DEBORAH CARONA'S MOTION |
| v. | ) ) | FOR SEVERANCE |
| MICHAEL S. CARONA, et al., | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

Before the Court is the Motion for Severance ("Motion") brought by Defendant Deborah Carona. After considering the moving, opposing, and reply papers, and oral argument by the parties, the Court GRANTS the Motion.

**BACKGROUND**

The Government's Second Superseding Indictment ("SSI") alleges that Michael Carona, his wife Deborah Carona, and Debra Hoffman conspired to use Michael Carona's office as Orange County Sheriff to enrich themselves and other co-conspirators, thereby depriving the citizens of Orange County of the honest services of an elected official. (SSI ¶¶ 12-13.) Included

in Count One are sixty-four overt acts allegedly committed in furtherance of the conspiracy. (SSI ¶ 15.) Deborah Carona is identified as a participant in six of the sixty-four overt acts. The overt acts allegedly committed by Deborah Carona include accepting improper gifts, (SSI ¶¶ 4, 19, 57, 59), assisting her husband in the concealment of cash payments, (SSI ¶¶ 48), and otherwise using her husband's influence to obtain benefits for herself. (SSI ¶ 43.)

In this Motion, Deborah Carona seeks severance of her trial from those of Michael Carona and Debra Hoffman. Deborah Carona argues that severance is necessary for two distinct reasons. First, she argues that operation of evidentiary privileges concerning the marital relationship would make it impossible for her to receive a fair trial if tried jointly with her husband, Michael Carona. Second, Deborah Carona contends that severance is necessary to remedy the improper joinder of her trial with those of Michael Carona and Debra Hoffman under Federal Rule of Criminal Procedure 8(b). In support of her evidentiary privilege theory, Deborah Carona has submitted to the Court her own declaration describing the nature of the testimony which she would seek to present in her defense, but which may be precluded by operation of evidentiary privilege. She has also submitted the declaration of Michael Carona, asserting his intention to invoke the evidentiary privilege at trial to prevent her from testifying about their confidential communications. Over the Government's objection, the Court previously determined that Deborah Carona is not required to disclose those declarations to the Government, as disclosure would unduly risk prejudicing Defendants by revealing elements of their trial strategy. (*See* April 8, 2008 Order Denying Government's *Ex Parte* Application for Order Directing Deborah Carona to Provide the Government with Copies of Declarations.)

The Court's ruling on this Motion is based in part on its *in camera* review of the declarations of Deborah and Michael Carona.

**LEGAL STANDARD**

Federal Rule of Criminal Procedure 14(a) provides that "if the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court

2

1 may order separate trials of counts, sever the defendants' trials, or provide any other relief that
2 justice requires." Fed. R. Crim. P. 14(a).  Because Rule 14(a) is permissive in nature, stating
3 that "the court may" sever defendants' trials, the decision of "[w]hether severance is necessary is
4 within the sound discretion of the district court." *United States v. Van Cauwenberghe*, 827 F.2d
5 424, 431 (9th Cir. 1987), *cert. denied*, 484 U.S. 1042 (1988) (citing *United States v. Ramirez*,
6 710 F.2d 535, 545 (9th Cir. 1983)).  The advisory committee notes to the 1944 adoption of Rule
7 14 state that the "rule is a restatement of existing law under which severance and other similar
8 relief is entirely in the discretion of the court."  Fed. R. Crim. P. 14, advisory committee note
9 (adopted 1944).  "A trial judge may order a severance if it appears that a defendant may be
10 significantly prejudiced by a joint trial with his codefendants."  *Van Cauwenberghe*, 827 F.2d at
11 431 (citing *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980)).

## **ANALYSIS**

Deborah Carona's Motion argues that severance is necessary to prevent the prejudice that would result from application of the evidentiary privileges related to marriage, and to correct the improper joinder of her trial with those of Michael Carona and Debra Hoffman.  Finding that the operation of the evidentiary privileges pose a threat of significant prejudice, and mindful of issues of fairness and judicial economy, the Court GRANTS the Motion on that basis without reaching the improper joinder issue.

**1.      THE MARITAL COMMUNICATIONS PRIVILEGE**

In federal courts, evidentiary privileges are "governed by the principles of common law as they may be interpreted by the courts of the United States in the light of reason and experience."  Fed. R. Evid. 501.  The common law recognizes two evidentiary privileges arising from the marital relationship, the marital communications privilege and the marital testimonial privilege.  *See United States v. Montgomery*, 384 F.3d 1050, 1056 (9th Cir. 2004).  The marital

1  communications privilege protects confidential communications made between husband and
2  wife during a valid marriage. *See United States v. Marashi,* 913 F.2d 724, 729 (9th Cir. 1990);
3  *see also In re Grand Jury Investigation of Hugle*, 754 F.2d 863, 864 (9th Cir. 1985). This
4  privilege survives the dissolution of the marriage, *Marashi*, 913 F.2d at 729, and may be
5  invoked by either spouse to prevent testimony regarding communications between the spouses.
6  *See Montgomery*, 384 F.3d at 1058-59.

7  According to Deborah Carona, there are confidential marital communications relevant to
8  this case that would be exculpate her from the Government's charges, but would incriminate
9  Michael Carona. (Motion 6:25-7:3; 11:8-10.) She contends that it would be unfair to hold a
10 joint trial because Michael Carona could invoke the marital communications privilege to prevent
11 her from presenting testimony regarding these confidential communications, hampering her
12 ability to defend herself. The Government contends that the request for severance should fail to
13 the extent it is based on communications falling within the joint-crime exception to the privilege,
14 and because Deborah Carona cannot show that the communications would be "substantially
15 exculpatory." (Opposition 9:3-21; 7:14-8:15.)

17 **2.      APPLICATION OF THE MARITAL COMMUNICATIONS PRIVILEGE**

19 After *in camera* review of the declarations of Deborah and Michael Carona, the Court
20 finds that the marital communications privilege does apply to the testimony proposed by
21 Deborah Carona. The marital communications privilege "(1) extends to words and acts intended
22 to be communication; (2) requires a valid marriage; and (3) applies only to confidential
23 communications." *Montgomery*, 384 F.3d at 1056. There is no dispute that a valid marriage
24 existed between the Caronas at the time of the claimed communications, and "communications
25 between the spouses, privately made, are generally assumed to have been intended to be
26 confidential, and hence they are privileged . . . ." *Id.* (quoting *Wolfle v. United States*, 291 U.S.
27 7, 14 (1934)). The Court finds that because the communications to which Deborah Carona
28 intends to testify were made privately between spouses and are thus entitled to a presumption of

1  confidentiality, they are privileged.

### 3. THE JOINT-CRIME EXCEPTION

Even if all required elements for a confidential marital communication are present, "the marital communications privilege does not apply to statements made in furtherance of joint criminal activity." *Marashi*, 913 F.2d at 731. The case law makes clear that application of the joint-crime exception requires that the purported communications not only relate to present or future crimes, but that the communications were made "in furtherance" of the crimes. *See United States v. Price*, 577 F.2d 1356, 1365 (9th Cir. 1978) ("extrajudicial statements of [spouses] made in furtherance of the conspiracy may be admitted against the other"); *see also United States v. Ramirez*, 145 F.3d 345, 355-56 (5th Cir. 1998) (holding that communications between husband and wife were not protected by marital communications privilege because they "were in furtherance of crimes").

The Government contends that to be relevant to Deborah Carona's defense the claimed communications "must relate to the charged conspiracy," and that if the communications relate to the charged conspiracy they are "likely admissible under the joint-crime exception." (Opposition 7:14-17.) The Government is correct that the claimed communications must "relate to" the allegations against Defendants or else they would be irrelevant to Deborah Carona's defense. But it does not necessarily follow that communications related to criminal charges are also likely to be in furtherance of the crimes. Examples of communications related to but not in furtherance of the crimes alleged against Defendants might include a statement from Michael Carona to Deborah Carona in which he provides a pretext for his own criminal acts, misleading Deborah Carona to believe that no wrongdoing had occurred. Such a statement would "relate to" the alleged crimes because it involves events and actions which comprise the crimes, but it would not further joint criminal activity between the spouses because it does not evidence or encourage Deborah Carona's participation in the criminal conduct.

The Court's *in camera* review of the declarations submitted by Deborah Carona reveal no

indication that the communications she desires to testify about were in furtherance of joint criminal activity, such that they fall within the joint-crime exception to the marital communications privilege.

### 4.     THE MARITAL COMMUNICATIONS PRIVILEGE AND SEVERANCE

Having determined that the communications Deborah Carona proposes to testify about satisfy the requirements of the marital communications privilege, and finding that the joint-crime exception does not preclude application of that privilege, the Court now turns to the issue of whether the operation of the privilege warrants severance of Deborah Carona's trial.

In opposing the request for severance, the Government cites case law involving the situation where one defendant requests severance on the grounds that a codefendant could provide exculpatory testimony if the trials were severed.  (Opposition 9:3-21 (citing *United States v. Pitner*, 307 F.3d 1178, 1181 (9th Cir. 2002) (addressing defendant's claim that a codefendant had offered to testify for him if the trials were severed); citing *United States v. Smith*, 918 F.2d 1551, 1560 (11th Cir. 1990) (addressing "defendant's severance motion based on the need for a codefendant's testimony")).  The Government is correct that a stringent standard is applied to requests for severance based on the potentially exculpatory testimony of a codefendant, and in such cases a district court must weigh a number of factors including whether (1) the codefendant would in fact be called to testify at a severed trial, (2) the codefendant would testify at a severed trial, and (3) the codefendant's testimony would be "substantially exculpatory."  *Pitner*, 307 F.3d at 1181.  But in this Motion Deborah Carona does not contend that Michael Carona could, or would, provide exculpatory testimony in her defense if the trials are severed.  Her position is more fundamental, claiming that she will not be able to give exculpatory testimony in her own defense unless the trials are severed.  The right to testify on one's own behalf in a criminal trial "has sources in several provisions in the Constitution" and is "essential to due process of law in a fair adversary process."  *Rock v. Arkansas*, 483 U.S. 44, 51 (1987) (citing *Faretta v. California*, 422 U.S. 806, 819 n.15 (1975)); *Comer v. Schriro*, 480 F.3d

960, 986 (9th Cir. 2007) (recognizing a defendant's "due process right to testify in his own defense"). But a defendant's right to present the testimony of a codefendant is not a right of equivalent constitutional magnitude. Thus it would be improper to follow the approach advocated by the Government and import the stringent standards applied in cases where a defendant seeks severance to benefit from a codefendant's testimony, *see, e.g., Pitner*, 307 F.3d at 1181, to a case where a defendant seeks severance to benefit from her own testimony.

While the Court will not apply the stringent standard used in cases involving codefendant testimony to the marital communications claimed by Deborah Carona, it is necessary that Deborah Carona establish the basic exculpatory nature of the privileged statements. Accordingly, the Court has examined the declaration of Deborah Carona and finds that the marital communications she proposes to testify about are exculpatory.

### 5.   CONCLUSION

Finding that Deborah Carona may be significantly prejudiced if her trial is not severed, and with due regard for issues of fairness and judicial economy, the Court exercises its discretion to sever her trial from those of Defendants Michael Carona and Debra Hoffman. *See Van Cauwenberghe*, 827 F.2d at 431. Because severance is warranted on the basis of the marital communications privilege, the Court does not consider whether severance is also warranted by the marital testimonial privilege or is necessary to rectify improper joinder.

The Court recognizes the Government's difficult task of opposing Deborah Carona's Motion for Severance without access to the declarations which largely form the basis for the Motion. But as the Court has noted before, "the decision of whether Deborah Carona's trial should be severed is not a dispositive determination of the criminal charges against her, and is ultimately in the Court's discretion." (April 8, 2008 Order Denying Government's *Ex Parte* Application.)

**DISPOSITION**

Defendant Deborah Carona's Motion for Severance is GRANTED.

IT IS SO ORDERED.

DATED: May 2, 2008

                                                     _____
                                                         Andrew J. Guilford
                                                  United States District Judge